**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**


BURNSED OIL COMPANY, INC.            PLAINTIFF/COUNTER-DEFENDANT

V.                              CIVIL ACTION NO. 3:03-cv-358 HTW-LRA

CELESTE C. GRYNBERG              DEFENDANT/COUNTER-PLAINTIFF


## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant/counter-plaintiff Celeste C. Grynberg (hereinafter "Celeste Grynberg") for summary judgment on her counterclaim brought pursuant to Rule 56(a)[1] of the Federal Rules of Civil Procedure [**Docket No. 30-1**].  Also before the court is the motion of the plaintiff/counter-defendant Burnsed Oil Company, Inc. (hereinafter "Burnsed Oil") for summary judgment submitted pursuant to Rule 56(b) of the Federal Rules of Civil Procedure [**Docket No. 37-1**].  Burnsed Oil filed the original complaint for declaratory judgment against Celeste Grynberg in the Chancery Court of Franklin County, Mississippi.  This complaint asked the court to declare the obligations of the parties under an assignment of overriding royalty interest and to recoup alleged overpayments of royalties from December, 1999, to August of 2000.   Celeste Grynberg removed the case to this court claiming

---

[1]Rule 56(a) of the Federal Rules of Civil Procedure provides that, "[a] party seeking to recover upon a claim, counterclaim, cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof."

jurisdiction pursuant to federal question and diversity of citizenship. The parties agree that the amount in controversy exceeds $75,000.00, exclusive of costs and interest. Burnsed Oil is a Mississippi corporation with its principle place of business in Natchez, Mississippi. Celeste Grynberg is a resident citizen of Colorado and asserts complete diversity of citizenship as this court's jurisdictional predicate pursuant to Title 28 U.S.C. § 1332.[2] Additionally, Grynberg claims federal question jurisdiction over this matter pursuant to Title 28 U.S.C. § 1331.[3] This court's subject matter jurisdiction is triggered here, says Grynberg, because to resolve this dispute, this court will be called upon to address the current vitality of 43 C.F.R. § 192.83.

## PERTINENT FACTS

Celeste Grynberg owns an assignment of royalty interest from which she had received overriding royalty interest payments ("ORRI" payments)[4] since 1995 when her husband, Jack J. Grynberg, assigned to her the interest he had obtained in 1967. The assignment of royalty interest in question pertains to 149.95 acres of land located in Franklin County, Mississippi. On September 13, 1967, Jack J. Grynberg, the husband of Celeste Grynberg, acquired a 50% interest in an oil and gas lease

---

[2]Title 28 U.S.C. § 1332 titled "Diversity of citizenship, etc.," subsection (a) provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States; ... ."

[3]Title 28 U.S.C. § 1331 provides that, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[4]An overriding royalty interest is created when a portion of the working interest is transferred from the oil and gas operator to either the landowner or a third party. An overriding royalty, like a royalty interest, is not subject to the costs of recovering oil and gas (or the risk that none will be found). 38 Am. Jur. 2d Gas & Oil §215 (1999).

belonging to one Irving Roy Deemar. Deemar had acquired his interest in the whole from the United States, acting through the Department of the Interior, Bureau of Land Management. The interest conveyed to Deemar by the United States pertained to production in the Willis Branch Field from the USA 29-14 #1 Well and the Ezell USA Unit #1 and #1-A Wells. Because the oil production from these wells comes from land in the public domain subject to the Mineral Leasing Act of 1920, as amended, all conveyances of oil and gas interests pertaining to these wells are subject to the regulations of the Secretary of the Interior. *See* Title 43 C.F.R. § 3100 *et seq.*

Roy Deemar assigned to Jack J. Grynberg 50% of Deemar's interest in the oil and gas lease in question which amounted to an overriding royalty interest of 6.5% (.065). This conveyance was accomplished by two documents, the first an *Assignment Affecting Record Title to Oil and Gas Lease*, Form 3120-13 of the United States Department of the Interior, Bureau of Land Management, dated September 1, 1967, which contains the following provision:

> It is agreed that the obligation to pay any overriding royalties or payments out of production of oil created herein, which, when added to overriding royalties or payments out of production previously created and to the royalty payable to the United States, aggregate in excess of 17 ½%, **shall be suspended when the average production of oil per well per day averaged on the monthly basis is 15 barrels or less.**

This language contained in the Bureau of Land Management (BLM) assignment document contains a paraphrase of the regulatory language which was required to be placed in assignment documents in 1967 pursuant to Title 43 C.F.R. § 192.83 (repealed 1988). The assignment document is accompanied by a second document,

3

another assignment agreement entered into between Deemar and Jack Grynberg

which provides, among other things, as follows:

**Assignment of Operating Rights and Designation of Operator**
effective September 1, 1967

This assignment is made subject to the reservation by the undersigned assignors of an overriding royalty of twelve and one-half percent (12 1/2%) of all oil and gas produced and saved from the date of production from the above described lands under the terms and provisions of said lease. *Said overriding royalty will be subject to the provisions of Section 192.83, Title 43, Code of Federal Regulations* (emphasis added).

Thus, the second document pertaining to the assignment agreement between Deemar

and Grynberg specifically provides that the agreement is subject to Title 43 C.F.R.

§ 192.83 of the 1961 Federal Regulations referred to in the Assignment of Operating

Rights and Designation of Operator document.

Title 43 C.F.R. § 192.83 provided as follows:

Any agreement to create overriding royalties or payments out of the production of oil which, when added to overriding royalties or payments out of production previously created and to the royalty payable to the United States, aggregate in excess of 17-1/2 percent shall be deemed a violation of the terms of the lease unless such agreement expressly provides that the obligation to pay such *excess overriding royalty or payments out of production of oil shall be suspended when the average production of oil per well per day averaged on a monthly basis is 15 barrels or less.*

This regulation was amended and renumbered over the years and, finally, was

repealed in 1988. Prior to its repeal, this regulation gave a well operator the authority

to suspend ORRI payments on marginally producing wells which exceeded 17.5% of a

well's total royalty burden.

Celeste Grynberg contends that no operator of the Willis Branch Field Wells

over the years ever contacted her to obtain her consent to reduce her ORRI payments

4

based on production falling below the per day average of 15 barrels, even after production began to fall below this level.  Grynberg says she continued to receive unreduced ORRI payments even after Burnsed Oil Company took over operation of the Willis Branch Field Wells.  Then, says Grynberg, at some time in July of 2000 Burnsed Oil began paying her an ORRI reduced by 60%, basing calculations of ORRI on Regulation 43 C.F.R. § 192.83 and its provision that ORRI payments of 17.5% will be suspended when production falls below an average of 15 barrels per day computed on a monthly basis, thereby resulting in payment based on a lower percentage rate for marginal production.

This repealed regulation and its impact upon the duty to continue paying overriding royalties is the dispute now before this court.  Burnsed Oil now seeks to recover its ORRI overpayments to Grynberg and to establish its right to suspend ORRI payments at the rate of 17.5% in accordance with 43 C.F.R. § 192.83 (repealed 1988).  Celeste Grynberg seeks an interpretation of this Regulation based on its having been repealed, a finding of waiver of the right to suspend ORRI payments based on the failure of prior operators to follow the Regulation, a finding of conversion by Burnsed Oil, and a finding that Burnsed Oil has breached the duty of good faith and fair dealing.   This court, realizing that resolving the questions presented depends on whether the decision of Congress to repeal this regulation affects the incorporation of this provision into the instant contract so as to render it void, directed the parties to conduct research and present authority on the affect of Regulation 43 C.F.R. § 192.83 in the instant case.

## THE FEDERAL JURISDICTIONAL PREDICATE

### A. Diversity of Citizenship

Where, as here, the amount in controversy is not stated specifically in the complaint or the removal papers, the Fifth Circuit Court of Appeals has established an analytic framework for resolving any disputes regarding federal court jurisdiction. *Luckett v. Delta Airlines*, 171 F.3d 295, 298 (5th Cir.1999). The removing defendant must prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000, exclusive of costs and interest. *Id.* The defendant may make this showing in two ways: (1) by demonstrating that it is "facially apparent" that the claims are likely in excess of $75,000, or (2) "by setting forth the facts in controversy - preferably in the removal petition, but sometimes by affidavit, that support a finding of the requisite amount." *Id.*, citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir.1995); *see also Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (explaining that the defendant may set forth " 'summary judgment type evidence' of facts in controversy that support a finding of the requisite amount"). If a defendant satisfies this burden, the plaintiff then must prove "to a legal certainty" that the claim is for less than $75,000. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995). "[U]nless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938). Inasmuch as the plaintiff agrees that the amount in controversy exceeds $75,000.00, exclusive of costs and interest, as alleged by the defendant/counter-plaintiff, this court is satisfied

that this court is afforded diversity jurisdiction over this matter. The assertion that federal question jurisdiction also exists presents a matter for further inquiry which is discussed below. Meanwhile, as a federal court sitting in diversity, this court must apply the substantive law of the state in which it sits, Mississippi. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

### B. The Jurisdictional Claim based on Federal Question

Claims asserted in state court, no matter how they are characterized by the plaintiff, are removable to federal court where they are necessarily federal in character by virtue of the clearly manifested intent of Congress. *Gilbreath v. Guadalupe Hospital Foundation Inc.*, 5 F.3d 785, 790 (5th Cir. 1993). A case "arises under" federal law when a, "right or immunity created by the Constitution or laws of the United States [is] an element, and an essential one, of the plaintiff's cause of action." *Franchise Tax Board. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). If, however, the state law creates the cause of action, the court must determine whether the plaintiff's demand "necessarily depends on resolution of a substantial question of federal law." *Id.* The instant complaint seeks declaratory relief, asking this court to find that Burnsed Oil was entitled to reduce its royalty payment burden in accordance with the terms of a contract assigning operator interest to Burnsed subject to enabling language which is part of a federal regulation. Burnsed also seeks to recover approximately seven months of overpayments. Interpretation of a contract is ordinarily within the province of state law. Mississippi applies the law of the state in which the contract was made, "made" being defined as

7

signed and accepted. *Bunge Corporation v. Biglane*, 418 F.Supp. 1159, 1163 (S.D. Miss. 1976); *see Smith Barney, Inc. v. Henry,* 775 So.2d 722, 728 (Miss. 2001) (applying state law governing enforcement of contracts to interpret an arbitration clause).

Celeste Grynberg presents two reasons for removing the instant case to federal court based on federal question. First, as noted previously, the Franklin County fields in question involve mineral lease interests originally owned by the United States, some percentages of which were auctioned to individuals such as Roy Deemar. Secondly, the document assigning the lease interest in question contains a provision once required by the Code of Federal Regulations (the "C.F.R. ") for fields where the United States owned interest in an oil lease. This provision, which Congress repealed while the 50% assignment from Deemar to Grynberg was in full force and effect, is still contained in the original lease assignment documents in question. Thus, the two documents in question, contracts of assignment which govern the relationship between the operator Burnsed Oil and royalty owners such as Celeste Gyrnberg, clearly provide that the obligation to pay overriding royalty interests may be suspended if production in the wells of the subject field drops below 15 barrels per day.

This court views the instant dispute as one over a contract between a Mississippi resident and a Colorado resident which governs the payment of overriding royalties pertaining to wells located in Mississippi. The crux of the instant dispute may involve 43 C.F.R. §192.83, and whether this federal regulation continues to be determinative of the parties obligations to one another now, notwithstanding that the

regulation was repealed in 1988.  Any federal character this case may have rests wholly upon the presence of this federal regulation language in the documents. Meanwhile, the merits of this case concern a dispute between a corporation/ well operator and an individual/ overriding royalty interest holder over the terms of a contract and whether it still permits reduced payment of ORRI under circumstances where production drops below 15 barrels per day.  The assignment contracts in question both were drafted with this limitation provision which now is repealed.

Neither party raises any questions which might be raised in a federal question context such as matters affecting federal land use, or affecting royalty payments to the United States[5], or impacting efficient recovery of mineral interest relating to offshore drilling, or any other matter plainly intended by Congress to be within the jurisdictional scope of federal courts.  *See Tennessee Gas Pipeline Co. v. Houston Casualty Company,* 881 F.Supp. 245, 250 (W.D. La. 1995).  Neither of the parties in this litigation is the federal government or an agent of the federal government.   Thus, Grynberg's assertion that Regulation 43 C.F.R. § 192.83 must be interpreted by a federal court is the only assertion offered to support federal question jurisdiction under Title 28 U.S.C. § 1331.

Therefore, this court finds that the jurisdictional predicate in this case is diversity of citizenship and the presence of the requisite amount in controversy, Title

---

[5]While Grynberg argues, among other things, that Burnsed Oil has improperly paid the United States's ORRI, as well as her own, due to an improper calculation and improper application of § 192.83, no issue involving royalty payments to the United States is before the court in the instant case.

9

28 U.S.C. § 1332. This court shall proceed to make its determination based on diversity.

## THE SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corporation v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden then shifts to the non-movant to go beyond the pleadings and "by ... affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts *652 showing that there is a genuine issue for trial." *Celotex Corporation*, 477 U.S. at 324, 106 S.Ct. 2548. That burden is not discharged by mere allegations or denials. *Id.* While all legitimate factual inferences must be viewed in the light most favorable to the non-movant, Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Celotex Corporation*, 477 U.S. at 322, 106 S.Ct. 2548. Before finding that no genuine issue for trial exists, the court must first be satisfied that no

10

reasonable trier of fact could find for the non-movant. *Matsushita Electrical Industries v. Zenith Radio Corporation*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## DOES REGULATION 43 C.F.R. § 192.83 STILL APPLY AFTER ITS REPEAL

### A. Burnsed Oil's Argument that the Regulation Applies

Burnsed Oil argues that the Regulation still applies and governs Burnsed's decision to suspend ORRI payments pertaining to the Willis Branch Field Wells, notwithstanding its repeal in 1988. Citing *Home Health Care Affiliates of Mississippi, Inc. v. North American Indem. N.V.*, 299 F.Supp.2d 645, 654 (N.D. Miss. 2004), Burnsed Oil submits that the repeal of a statute generally is not effective retroactively unless its express language so provides. As corollary to this principle, Burnsed Oil notes that statutes subsequently enacted do not affect vested contractual rights, *Oates v. Equitable Assurance Society of the United States*, 717 F.Supp. 449, 451 (S.D. Miss. 1988), so, subsequently repealed statutes will not affect already established contractual rights unless the repeal language specifically provides for the repeal to have this affect. *See Scarborough v. Travelers Insurance Company*, 718 F.2d 702, 714 (5th Cir. 1983) (a statute, or by corollary the repeal of a statute, is generally not effective retroactively unless its express language so provides; however, a statute may be given retroactive effect when doing so does not impair vested rights).

Next, Burnsed Oil refers to 43 C.F.R. § 3103.3-1 which provides in pertinent part that, "[r]oyalty on production shall be payable only on the mineral interest owned by the United States. Royalty shall be paid in amount or value of the production

11

removed or sold as follows: (1) 12 ½ percent on all leases, ..., except: (ii) Leases issued on or before December 22, 1987, which are subject to the rates contained in the lease or in regulations at the time of issuance; ... ." Burnsed Oil submits that for leases entered into before December 22, 1987, any rates of interest other than 12.5% have survived, notwithstanding this regulation. Furthermore, says Burnsed Oil, according to 43 C.F.R. § 3106.7-6, when one acquires a Federal lease by assignment or transfer, one must, "(b) ... agree to comply with the terms of the original lease as it applies to the area or horizons in which you acquired rights ... ." If this court were to hold that § 192.83 no longer applied in this case due to its repeal, says Burnsed Oil, then operators would always be subjected to unknown future requirements regarding federal leases because of changing regulations. The ill effect of applying the repeal retroactivity, says Burnsed Oil, is the frustration of the expectations of those who have justifiably relied on a prior version of the rule in question. *McDonald v. Watt*, 653 F.2d 1035, 1044 (5th Cir. 1981).

Burnsed Oil cites *Mobil Oil Exploration and Producing Southeast, Inc. v. United States*, 530 U.S. 604, 120 S.Ct. 2423, 147 L.Ed.2d 528 (2000), a case involving oil and gas leases sold by the United States pursuant to the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1331 et seq. The plaintiffs, Marathon Oil Company and Mobil Oil Exploration and Producing Southeast, Inc. had entered into contracts with the United States more than twenty years prior to explore and develop oil and gas leases on the outer continental shelf off the coast of North Carolina. OCSLA enabled the Secretary of the Interior to sell leases that entitled the lessees to explore, develop,

and produce the oil and gas contained within the leased area, conditioned upon various applicable requirements. In 1990 the federal government enacted the Outer Banks Protection Act ("OBPA"), P.L. No. 101-380, § 6003, 104 Stat. 484, 555-58 (Aug. 18, 1990), which substantially altered the statutory scheme for issuance of the permits required to explore and develop the tracts. The effect of the OBPA was to impair the plaintiffs' rights under their lease contracts. In 1992 Marathon and Mobil joined a lawsuit in the Court of Federal Claims filed by other companies with oil and gas leases similarly impaired by the OBPA. The complaints alleged that the United States had breached the lease agreements. The plaintiffs demanded restitution of the amounts they had paid for the leases. The Federal Claims Court agreed and awarded the plaintiffs a combined amount of about $156,000,000.00. The Federal Circuit vacated this ruling and entered a new judgment for the United States. On appeal to the United States Supreme Court, the Supreme Court reversed, holding that the United States had broken its original promise and had repudiated the original contracts when it insisted on applying the new regulations under OBPA to its prior existing contracts with Marathon, Mobile and others. Burnsed Oil submits this decision in support of its argument that the regulations in effect at the time United States' lease interests are assigned remain in effect, and that, barring any new lease contract, statutes and regulations already existing at the time of the contract continued to govern. *See General Dynamics Corporation v. United States*, 47 Fed.Cl. 514, 543-44 (Fed. Cl. 2000)(same).

Burnsed Oil concludes that the lease interest conveyed from Deemar to Jack L. Grynberg has been in full force and the wells in question have been in continued production since 1967, that no new lease has been entered into since that time, and that the federal regulations in effect in 1967 continue to govern the matter of ORRI payments from marginally producing wells.

**B. Celeste Grynberg's Argument that the Regulation No Longer Applies**

Celeste Grynberg submits that the potential limitation on ORRI payments for marginally producing wells provided by 43 C.F.R. §192.83 was incorporated into the Assignment Affecting Record Title to Oil and Gas Lease, and into the Assignment of Operating Rights and Designation of Operator, effective September 1, 1967, as a matter of law, because the parties obviously did not want to violate federal law and lose their lease interests.  Grynberg implies that this court may declare § 192.83 now unenforceable if the proof shows that the parties only agreed to be bound by § 192.83 due to the legal necessity at the time.

Next, Celeste Grynberg notes that 43 C.F.R.  §192.83 was renumbered 43 C.F.R.  § 3125.4 in 1965; and then renumbered again in 1971 as 43 C.F.R.  § 3103.3-6.  Both of these redesignations retained the exact language of 43 C.F.R.  § 192.83.  In 1983, says  Grynberg, the regulation again was renumbered as 43 C.F.R. § 3103.3-6 with revisions in the language which provided that the existence of an excessive ORRI for marginally producing wells no longer constituted an automatic violation of the

governing regulation.[6]  This 1983 version remained in effect until the statute was repealed in 1988.  Grynberg submits that the Bureau of Land Management  elected to no longer regulate ORRI payments.  So, because ORRI payments  were regulated differently after 1983, Grynberg argues that there is no basis for continuing to apply § 192.83 as it was worded before 1983.

The Mississippi authority cited by Grynberg, *USPCI of Mississippi, Inc. V. State ex rel. McGowan*, 688 So.2d 783 (Miss. 1997), involves an amendment to a statute which took place while the case was on appeal to the Mississippi Supreme Court.  The Court stated that, "[w]hen cases are in the bosom of this Court and there is involved a statute that is modified prior to a final decision of this Court, we take that modification into consideration." *Bell v. Mitchell*, 592 So.2d 528 (Miss.1991), citing *Parker v. Bailey*, 437 So.2d 33 (Miss.1983).  This Court has also stated that in this circumstance, when a ruling on a statute was on appeal, an amendment to the statute should be treated as though it had been a part of the original statute. *City of Clarksdale v. Miss. Power & Light Co.*, 556 So.2d 1056, 1057 (Miss. 1990).  The instant case is not in this posture, and the regulation in question no longer exists.  The question before this court, whether the regulation still applies, arises out of the repeal of the statute, not from the addition of language to the statute.

---

[6]Title 43 C.F.R.  3103.3-3 (eff. August 22, 1983) provided as follows:  An agreement creating overriding royalties or payments out of the production of oil and gas which, when added to overriding royalties or payments out of production previously created and to the royalty payable to the United States, aggregate in excess of 17-1/2 percent may be suspended by the Secretary at any time upon determination that the excess constitutes a burden on lease operations to the extend that proper and timely development may be retarded, or continued operation of the lease impaired, or premature abandonment of the wells caused.  The limitations in this section shall apply separately to any zone or portion of a lease segregated for computing royalty due the United States.

This court also is unpersuaded by Grynberg's reliance on *Webb v. Beto,* 457 F.2d 346 (5th Cir. 1972), where the Fifth Circuit referred to the principle recognized by the United States Supreme Court that a person cannot be convicted after the law under which he was prosecuted has been repealed, notwithstanding that the offense may have been committed before the repeal. This rule, said the Fifth Circuit, applies where a law is repealed or expires while the case is on appeal to the highest court authorized to review it. *Bell v. Maryland*, 378 U.S. 226, 231 n. 2, 84 S.Ct. 1814, 12 L.Ed.2d 822 (1964). Of course, this case addressed the effect of a repeal on a conviction on appeal, a matter considerably different from the contract issue before this court.

Next, Grynberg refers to the language contained in the Assignment of Operating Rights and Designation of Operator, effective September 1, 1967,[7] and comments that this language does not say that the ORRI will always be reduced when production falls below 15 barrels per day, but merely that the ORRI is subject to this, suggesting that the operator has the option to follow the regulation, or not to, just so long as the assignment document contains reference to the provisions of § 192.83.

Even if this court finds § 192.83 to be applicable, Grynberg contends that the reduction was not calculated properly, having paid the United States based on the

---

[7]This language, previously set forth above, provides that, "[t]his assignment is made subject to the reservation by the undersigned assignors of an overriding royalty of twelve and one-half percent (12 1/2%) of all oil and gas produced and saved from the date of production from the above described lands under the terms and provisions of said lease. *Said overriding royalty will be subject to the provisions of Section 192.83, Title 43, Code of Federal Regulations* (emphasis added)."

"stripper rate" of 9.3%[8] instead of the full 12.5%, and that this method of application excessively reduced the ORRI paid to Grynberg.

Finally, Grynberg claims waiver of the right to apply § 192.83 by the operator based on the ordinary course of dealings. For 32 years, says Grynberg, all operators paid the full ORRI, unlimited by § 192.83, and notwithstanding marginal production by various of the Willis Branch Field wells. For instance, says Grynberg, Hellenic Oil always paid an unreduced ORRI, even though production fell below 15 barrels per day at various times over 11 to 17 years of operations. Grynberg suggests that Hellenic Oil certainly must have known of its right to reduce ORRI payments under § 192.83, and that it waived its right by failing to exercise it in the due course of dealing.

Based on these arguments, Grynberg submits that § 192.83 is no longer applicable to the calculation of her ORRI payments, and that retention of any part of her payments due and owing by Burnsed Oil amounts to conversion of part of the proceeds.

## ANALYSIS

Celeste Grynberg may be correct that the references to § 192.83 contained in the documents in question were included only because of the regulatory requirement in effect at the time the Deemar/Grynberg agreements were entered into, but this does not render § 192.83 any less applicable in the instant case. Under Mississippi law, the intention of contracting parties is to be gleaned from the wording of the contract itself, and not from any speculation regarding the "true" intention of the parties. *In re Estate*

---

[8]Grynberg explains that the term "stripper well" is a term applied to a marginally producing well, i.e., a well producing less than 15 barrels per day.

*of Fitzner*, 881 So.2d 164, 171 (Miss. 2003) (addressing the parol evidence rule). Here, the wording of the agreements in question can lead to no other conclusion than that the parties intended to be bound by § 192.83. This argument says nothing about the affect of the 1988 repeal.

Grynberg argues that the numerical designation changes combined with the modification of the regulatory language in 1983 must be interpreted so as to render § 192.83 inapplicable to the current ORRI obligations of Burnsed Oil. Burnsed Oil responds, citing *El Paso Natural Gas Company v. American Petrofina Company of Texas*, 733 S.W.2d 541 (Tex.App.-Hous. [1 Dist.] 1986), a case which applied § 192.83 in accordance with its 1952-53 language, notwithstanding the change in the regulatory language in 1983. This court is not persuaded that a subsequent change in regulatory language somehow nullifes the language of the regulation which governed at the time the agreements in question were executed.

Next, in connection with her waiver argument, Grynberg submits that reducing ORRI payments for marginal production was optional because the language of the second assignment agreement did not say that ORRI would always be reduced. The operators of the wells in question, says Grynberg, did not exercise this option, thereby waiving it. Grynberg notes that even Burnsed Oil did not exercise the option right away. Under Mississippi law, however, option provisions usually have recognizable characteristics such as the requirement to exercise the option within a given period and to give notice of the intent to exercise such option. *Robinson v. Martel Enterprises, Inc.*, 337 So.2d 698, 702 (Miss. 1976). These common features are not present in the

18

Assignment of Operating Rights and Designation of Operator or in the Assignment Affecting Record Title to Oil and Gas Lease, Form 3120-13 of the United States Department of the Interior, Bureau of Land Management, dated September 1, 1967. Instead, this document states that, "overriding royalty will be subject to the provisions of Section 192.83, Title 43, Code of Federal Regulations." The Assignment Affecting Record Title to Oil and Gas Lease simply parallels the language of § 192.83, stating that ,"it is agreed that the obligation to pay any overriding royalties or payments out of production of oil created herein, which, when added to overriding royalties or payments out of production previously created and to the royalty payable to the United States, aggregate in excess of 17 ½%, shall be suspended when the average production of oil per well per day averaged on the monthly basis is 15 barrels or less." Neither of these documents contains an option clause.

Next, Grynberg argues that operators prior to Burnsed Oil never reduced ORRI payments even when the wells in question fell to marginal production. Specifically, Grynberg notes that the operator Hellenic Oil & Gas Company always paid the full royalty and that this practice continued from 1968 to 2000.

Burnsed Oil became the operator in December of 1999. Grynberg agrees that in July or August of 2000 Burnsed Oil reduced ORRI payments for the first time. Citing *Sentinel Industrial Contracting Company v. Exxon*, 743 So.2d 954, 964 (Miss. 1999), Grynberg argues that a persistent pattern of conduct can establish waiver. However, the persistent pattern of conduct on which Grynberg relies in the instant case was engaged in by Hellenic Oil, not by Burnsed Oil. This court finds no evidence that

Burnsed Oil intentionally waived its right to reduce ORRI payments pertaining to marginally producing wells, even if it took Burnsed seven months to impose a reduction on ORRI. Moreover, in its original declaratory judgment action filed in state court, Burnsed has sued to recover the ORRI overpayments it made to Grynberg from December of 1999 to August of 2000.

Under Mississippi law a waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. *Robinson v. State*, 345 So.2d 1044, 1045 (Miss. 1977), citing *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). "[A] waiver presupposes a full knowledge of a right existing, and an intentional surrender or relinquishment of that right." *Taranto Amusement Company, Inc. v. Mitchell Assoicates, Inc.,* 820 So.2d 726, 729-30 (Miss. Ct. App. 2002). "To establish a waiver, there must be shown an act or omission on the part of the one charged with the waiver fairly evidencing an intention permanently to surrender the right alleged to have been waived." *Id.* In this court's view, Burnsed Oil's actions do not reflect any intention to forego the right to reduce ORRI payments for marginally producing wells.

## CONCLUSION

In light of the foregoing, this court finds that the motion of the defendant/counter-plaintiff Celeste C. Grynberg for summary judgment on her counterclaim [**Docket No. 30-1**] is not well taken and the same is hereby denied. The motion of the plaintiff/counter-defendant Burnsed Oil Company, Inc. [**Docket No. 37-1**], seeking summary judgment declaring that Burnsed Oil properly reduced overriding royalty

payments under Title 43 C.F.R. § 192.83 and is entitled to recoup overpayments of overriding royalties from December, 1999, to August of 2000 is granted.  The court will enter a Final Judgment in accordance with the local rules.

      **SO ORDERED** this the 31st day of March, **2008**.

                **s/ HENRY T. WINGATE**
                **CHIEF UNITED STATES DISTRICT JUDGE**

CIVIL ACTION NO. 3:03-cv-358 HTW-LRA
Memorandum Opinion and Order